UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22961

MICHAEL MURPHY,

    Plaintiff,

v.

MSC CRUISES, S.A.,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, MICHAEL MURPHY (hereinafter "MURPHY"), through undersigned counsel, sues Defendant, MSC CRUISES, S.A., (hereinafter "MSC"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. MURPHY seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by MSC.

5. MURPHY is *sui juris* and is a resident and citizen of the state of Florida.

6. MSC is a citizen of the State of Florida and the nations of Italy and Switzerland.

7. MSC is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8. MSC, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a. Operated, conducted, engaged in, or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10. Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the surface that MURPHY slipped on, the foreign substance on the subject surface, the surrounding area, and all material and effects pertaining thereto, including any anti-slip/skid material that was applied or that should have been applied, and/or other parts thereof, drains that were or should have been in the area to reduce the amount of liquid in the area, any sources of liquid in the subject area and/or the sources of the liquid involved in MURPHY's incident, the area and surface's design and/or visual condition, and/or any other applied, adhesive, and/or other material.

11. At all times material hereto, MSC owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in MURPHY'S incident.

12. At all times material hereto, MSC owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Divina*.

13. MURPHY'S incident occurred on or about April 25, 2022, while he was a fare paying passenger on MSC'S vessel, the *Divina*.

14. On or about April 25, 2022, between approximately 10:00-10:30 a.m., MURPHY was on the 14th floor of the *Divina*, and slipped and fell on an unreasonably wet and slippery surface. A crew member was in the immediate vicinity, and shortly after MURPHY's fall, this crewmember put a 'wet floor" sign in the subject area.

15. As a result, he sustained severe injuries that include, but are not limited to, a severe rotator cuff tear and/or physical therapy, among other injuries, which required surger(ies).

16. At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

    a. The foreign substance on the subject surface, which caused the subject surface to become unreasonably slippery, and which caused MURPHY to slip and fall.

    b. The floor MURPHY slipped on lacked adequate slip resistant material.

    c. There were no reasonable safety measures such as reasonable places MURPHY could grab in the subject area to prevent or mitigate the fall.

    d. There was either non-existent drainage for the subject floor or any such drainage was not reasonably draining liquid from the subject area at the time of MURPHY's incident.

    e. The unreasonable lack of policies and/or the unreasonable non-enforcement of such policies regarding the use of slip-resistant footwear in the subject area.

    f. There was no rug/carpet on the subject surface to prevent it from becoming

  slippery when wet.

 g. There were no adequate air blowers, crew members squeegeeing the area, and/or other reasonable measures to keep the area dry present at the time of the incident.

 h. Other dangerous conditions that will be revealed through discovery.

17. Each of these dangerous conditions alone was sufficient to cause MURPHY'S incident and injuries, and MURPHY is alleging that MSC was negligent as to each of these conditions separately and not cumulatively.

18. MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

 a. MURPHY did not observe anyone spill anything in the location where he later slipped and fell for at least ten minutes prior to his incident, such that it is reasonable for the fact finder to infer that the foreign substance that was on the subject floor was present for over ten minutes prior to MURPHY's incident, and MSC should have known of this substance had it performed reasonable inspections to keep its surfaces reasonably safe.

 b. MURPHY observed an MSC crewmember in the subject area at the time of the incident who appeared to be responsible for keeping the area safe, and this crewmember was in the immediate vicinity, and placed a warning sign in the area shortly after MURPHY fell, such that MURPHY reasonably infers that this crew member regularly used, observed, and tended to the subject area, and therefore was or should have been aware of the dangerous and/or risk-creating conditions thereof, and warned of and/or removed these conditions.

c. MSC participated in the installation and/or design of the subject area, or alternatively, MSC accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject surface, such that MSC should have known of the design defects of the subject surface and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 16 of this complaint.

d. Both prior to MURPHY's incident and after, MSC installed and/or refitted a rug/carpet in the subject area on the subject ship and other ships in MSC's fleet that were made the subject surface less slippery.

e. Both prior to MURPHY's incident and after, MSC installed and/or refitted similar surfaces on the subject ship and other ships in MSC's fleet that were less slippery, and which were more easily visible.

f. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 16 of this Complaint, and MSC should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for MSC to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

g. MSC also knew or should have known of these dangerous conditions through inspecting the subject area involved in MURPHY'S incident, and if it did not know of these dangerous conditions, this was because MSC failed to adequately inspect the

        subject area prior to MURPHY'S incident.

    h. Previous passengers in prior cases suffered prior slip and fall incidents involving similar surfaces on the same ship and other ships in MSC'S fleet, including, but not limited to, *Postar v. MSC Cruises, S.A.*, Case 1:22-cv-22124-DPG, *Rivera v. MSC Cruises, S.A.*, Case 1:22-cv-21386-KMM, *Melaih v. MSC Cruises, S.A.*, Case 0:20-cv-61341-RS, *Lorenzo-Garcia v. MSC Cruises, S.A.*, Case 1:20-cv-23552-DPG, *Goldstein v. MSC Cruises, S.A.*, Case No. 0:18-cv-61348-WPD, *Hodson v. MSC Cruises*, S.A., 1:20-cv-22463-FAM, and *Milana v. MSC Cruises, S.A.*, Case 1:20-cv-21482-CMA.

    i. Moreover, MSC knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

19. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

20. The subject area and the vicinity lacked adequate safety features to prevent or minimize MURPHY'S incident and/or injuries.

21. These hazardous conditions were known, or should have been known, to MSC in the exercise of reasonable care.

22. These hazardous conditions existed for a period of time before the incident.

23. These conditions were neither open nor obvious to MURPHY.

24. At all times relevant, MSC failed to adequately inspect the subject area and the vicinity for dangers, and MSC failed to adequately warn MURPHY of the dangers.

25. At all times relevant, MSC had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

**ARONFELD TRIAL LAWYERS**
[Aronfeld.com](Aronfeld.com)
**Page 6 of 20**

26. At all times relevant, MSC failed to maintain the subject area and the vicinity in a reasonably safe condition.

27. At all times relevant, MSC participated in the design and/or approved the design of the subject area and the vicinity involved in MURPHY'S incident.

28. At all times relevant, MSC participated in the installation and/or approved the installation of the subject area and the vicinity involved in MURPHY'S incident.

29. The crewmembers of the *Divina* were in regular full-time employment of MSC and/or the ship, as salaried crewmembers.

30. MSC's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and MSC had the right to hire and fire its crewmembers, employees, and/or agents.

31. MSC is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

32. The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of MSC, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

33. The crewmembers were represented to MURPHY and the ship's passengers as employees of MSC through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by MSC. MSC knew that the crewmembers represented themselves to be employees of MSC and allowed them to represent themselves as such. MURPHY detrimentally relied on these representations as MURPHY would not have proceeded on the subject cruise had he believed the crewmembers were not employees of MSC.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

34. MURPHY hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

35. MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

36. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

37. At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC breached the duty of reasonable care owed to MURPHY and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 16 of the instant Complaint were present at the time of MURPHY'S incident.

38. MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the Complaint.

39. These risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

40. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41. MSC'S breach was the cause in-fact of MURPHY'S great bodily harm in that, but for MSC'S breach, MURPHY's injuries would not have occurred.

42. MSC'S breach proximately caused MURPHY great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

43. As a result of MSC'S negligence, MURPHY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MURPHY'S vacation, cruise, and transportation costs.

44. The losses are permanent and/or continuing in nature.

45. MURPHY suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MURPHY, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MURPHY will suffer and incur in the future, as a result of MURPHY's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of MURPHY'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

46. MURPHY hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

47. MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

49. At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MURPHY and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 16 of the instant Complaint were present at the time of MURPHY'S incident.

50. MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant complaint.

51. Moreover, these risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately maintain the subject area and the vicinity.

52. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

53. MSC'S breach was the cause in-fact of MURPHY'S great bodily harm in that, but for MSC'S breach, MURPHY's injuries would not have occurred.

54. MSC'S breach proximately caused MURPHY great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

55. As a result of MSC'S negligence, MURPHY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MURPHY'S vacation, cruise, and transportation costs.

56. The losses are permanent and/or continuing in nature.

57. MURPHY has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MURPHY, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MURPHY will suffer and incur in the future, as a result of MURPHY's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of MURPHY'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT III
### NEGLIGENT FAILURE TO REMEDY

58. MURPHY hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

59. MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

60. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

61. At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MURPHY and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 16 of the instant Complaint were present at the time of MURPHY'S incident.

62. MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant Complaint.

63. Moreover, these risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately remedy the subject area.

64. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

65. MSC'S breach was the cause in-fact of MURPHY'S great bodily harm in that, but for MSC'S breach, MURPHY's injuries would not have occurred.

66. MSC'S breach proximately caused MURPHY great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

67. As a result of MSC'S negligence, MURPHY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MURPHY'S

vacation, cruise, and transportation costs.

68. The losses are permanent and/or continuing in nature.

69. MURPHY has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MURPHY, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MURPHY will suffer and incur in the future, as a result of MURPHY's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of MURPHY'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

70. MURPHY hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

71. At all times relevant, MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including MURPHY.

72. Such duty includes, but is not limited to, the duty that MSC owes to warn passengers of any dangers that it knew or should have known were not open and obvious to MURPHY.

73. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

74. At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with

MSC, breached the duty of reasonable care owed to MURPHY and was negligent by failing to warn MURPHY of the dangerous conditions discussed in paragraph 16 of the instant Complaint.

75. Furthermore, MSC knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18 of this Complaint.

76. These dangerous conditions were also created by MSC.

77. MSC failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or MSC failed to warn MURPHY despite knowing of the dangers.

78. These dangerous conditions existed for a period of time before the incident.

79. These conditions were neither open nor obvious to MURPHY.

80. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

81. MSC'S breach was the cause in-fact of MURPHY'S great bodily harm in that, but for MSC'S breach, MURPHY's injuries would not have occurred.

82. MSC'S breach proximately caused MURPHY great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

83. As a result of MSC'S negligence, MURPHY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MURPHY'S vacation, cruise, and transportation costs.

84. The losses are permanent and/or continuing in nature.

85. MURPHY has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MURPHY, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MURPHY will suffer and incur in the future, as a result of MURPHY's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of MURPHY'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT V
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

86. MURPHY hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

87. At all times material hereto, MSC owed a duty to its passengers, and in particular a duty to MURPHY, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 16 in the instant Complaint, as well as to design and install reasonable safeguards.

88. At all times material hereto, MSC participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which MURPHY was injured into the channels of trade, and/or MSC approved of the subject vessel's design, including the design of the subject area and the vicinity.

89. At all times material hereto, MSC manufactured, designed, installed, and/or approved

of the *Divina*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to MURPHY, to design, install and/or approve of the subject area and the vicinity without any defects.

90. At all times material hereto, MSC through its agents and/or employees who were acting in the course and scope of their employment and/or agency with MSC, designed, installed, and/or approved of the subject area and the vicinity involved in MURPHY'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

91. MSC provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

92. MSC maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Divina*, during the new build process.

93. MSC has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

94. MSC has the right to inspect and reject design elements before taking possession of the ship.

95. However, MSC permitted the dangerous conditions discussed in paragraph 16 of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

96. Furthermore, MSC knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18 of this Complaint.

97. The design flaws that made the subject area and the vicinity involved in MURPHY'S

incident unreasonably dangerous were the direct and proximate cause of MURPHY'S injuries.

98.  MSC is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MURPHY'S incident, which it knew or should have known of.

99.  MSC failed to correct and/or remedy the defective conditions, despite the fact that MSC knew or should have known of the danger(s).

100.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

101.  MSC'S breach was the cause in-fact of MURPHY'S great bodily harm in that, but for MSC'S breach, MURPHY's injuries would not have occurred.

102.  MSC'S breach proximately caused MURPHY great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

103.  As a result of MSC'S negligence, MURPHY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MURPHY'S vacation, cruise, and transportation costs.

104.  The losses are permanent and/or continuing in nature.

105.  MURPHY has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MURPHY, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs

that MURPHY will suffer and incur in the future, as a result of MURPHY's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of MURPHY'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VI
## NEGLIGENCE FOR THE ACTS OF MSC'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

106. MURPHY hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

107. MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

108. The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, including specifically the crewmember who was in the immediate vicinity and placed a warning in the area shortly thereafter, were agents of MSC for the following reasons:

    a.    They were the staff and/or employees of MSC, or were MSC'S agents, apparent agents, and/or servants; and/or

    b.    These staff, employees, and/or agents were subject to the right of control by MSC; and/or

    c.    These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

    d.    MSC acknowledged that these staff, employees, and/or agents would act on MSC'S

behalf, and they accepted the undertaking.

109. MSC is vicariously liable for the acts of its staff, employees, and/or agents, in failing to inspect, maintain, remedy, or warn of the dangerous conditions discussed in paragraph 16 of the instant complaint.

110. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

111. MSC'S breach was the cause in-fact of MURPHY'S great bodily harm in that, but for MSC'S breach, MURPHY's injuries would not have occurred.

112. MSC'S breach proximately caused MURPHY great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

113. As a result of MSC'S negligence, MURPHY has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of MURPHY'S vacation, cruise, and transportation costs.

114. The losses are permanent and/or continuing in nature.

115. MURPHY has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MICHAEL MURPHY, demands judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MURPHY will suffer and incur in the future, as a result of MURPHY's bodily injury, pain and

suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of MURPHY'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL MURPHY, demands trial by jury on all issues so triable.

**Dated:** September 16, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for MURPHY***